# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHYANNE LORD, | ) | CIVIL ACTION FILE |
| | ) | NO. _____ |
| Plaintiff, | ) | |
| | ) | JURY TRIAL DEMANDED |
| v. | ) | |
| METROPOLITAN ATLANTA | ) | |
| RAPID TRANSIT AUTHORITY and | ) | |
| AYODELE ADENRELE, in his Individual | ) | |
| Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Shyanne Lord ("Plaintiff" or "Lord") respectfully submits the following Complaint:

## INTRODUCTION

This is a case of sexual harassment and retaliation. Defendant Ayodele Adenrele ("Adenrele") is a hostler, or bus maintenance worker. He is employed in the Bus Maintenance Department of Defendant Metropolitan Atlanta Rapid Transit Authority ("MARTA"). Plaintiff Shyanne Lord was his coworker.

Adenrele subjected Lord to frequent, vulgar sexual comments about her body, about what it would cost to "rent" her for a night, about graphic sexual acts, and

1

similar topics. On multiple occasions, he sexually assaulted her at work, including by forcing his erect penis against her from behind, and by grabbing her private areas. Mr. Adenrele also directed disgusting sexual behavior toward other women at work.

Lord and several other women complained to their supervisors, but MARTA took no action to investigate or stop Adenrele's conduct. Lord escalated her complaints to senior managers, to MARTA's Equal Employment Office and, ultimately, to MARTA's then-Chief Executive Officer Elizabeth O'Neill. Adenrele continued sexually harassing Lord for months after she made her initial reports. When MARTA finally investigated, it found Adenrele had not violated its anti-sexual harassment policies, despite written complaints of sexual harassment from Lord and multiple other women. MARTA allowed him to remain employed without serious discipline. After MARTA concluded its investigation, it embarked on a campaign of retaliatory actions against Lord.

Lord brings claims of sexual harassment and retaliation against MARTA under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* She also brings claims, against both Defendants, under the Fourteenth Amendment Equal Protection Clause of the United States Constitution via 42 U.S.C. § 1983. She brings tort claims against Adenrele. She seeks declaratory and injunctive relief, damages, and her attorneys' fees and costs.

## JURISDICTION AND VENUE

1.      Lord's claims under 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Fourteenth Amendment (actionable via 42 U.S.C. § 1983) present federal questions over which the Court has subject matter jurisdiction under 28 U.S.C. § 1331. The Court has supplemental jurisdiction over her tort claims under 28 U.S.C. § 1367.

2.      This Court is a proper venue for Plaintiff's claims under 28 U.S.C. § 1391(b), because the Defendants reside in the Northern District of Georgia and because the unlawful conduct giving rise to the claims occurred in this District.

## THE PARTIES

3.      Lord is a resident of the Northern District of Georgia and subjects herself to this Court's jurisdiction.

4.      MARTA is a governmental authority headquartered at 2424 Piedmont Rd, NE, Atlanta, GA 30324-3311.

5.      At all times relevant to this Complaint, MARTA operated under the laws of the State of Georgia, transacted business in this State and judicial district, and maintained facilities and operations in this State and district.

6.      Pursuant to O.C.G.A. § 9-11-4(e)(5), MARTA may be served with process by serving a copy of the Complaint and Summons on Jeffrey A. Parker, General

Manager/Chief Executive Officer of MARTA, at MARTA's headquarters on 2424 Piedmont Road, NE, Atlanta, Georgia 30324.

7.      Adenrele is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction.

8.      He may be served with process via personal service at his residence or at his place of employment: MARTA's bus maintenance facility located at 277 Laredo Dr, Decatur, GA 30030.

9.      At all times relevant to this Complaint, Lord was MARTA's "employee" within the meaning of Title VII.

10.     At all times relevant to this Complaint, MARTA was Lord's "employer" within the meaning of Title VII.

## SATISFACTION OF EEOC PREREQUISITES

11.     Lord filed an EEOC charge on January 5, 2018 alleging sexual harassment and retaliation, and she made allegations before the EEOC which fairly placed MARTA on notice of the Title VII claims Lord brings in this lawsuit.

12.     Lord filed her charge within less than 180 days of the last act of sexual harassment to which she was subjected and within less than 180 days of the relevant retaliatory actions she alleges here.

13.     Lord timely filed her EEOC charge.

4

14.     The EEOC issued a Notice of Right to Sue dated March 12, 2019.

15.     Lord filed this lawsuit less than 90 days after the date her Notice of Right to Sue was issued.

16.     Lord's Title VII claims are timely filed.

17.     Lord has exhausted the administrative perquisites to her filing her Title VII claims.

## FACTUAL ALLEGATIONS

18.     Lord began her employment with MARTA in November 2015.

19.     She held the position Service Person IV/ Hostler.

20.     Lord was part of MARTA's Bus Maintenance department.

21.     Her job generally entailed maintaining MARTA buses and parking them in designated locations.

22.     In October 2016, MARTA relocated Lord to a new facility, the Laredo bus maintenance facility ("Laredo Garage" or "Laredo") located at 277 Laredo Drive in Decatur, Georgia.

23.     When Lord began working at Laredo Garage, Adenrele was already employed there.

24.     Adenrele was also a MARTA Service Person IV/ Hostler.

25.     Within Lord's first week at Laredo Garage, Adenrele began subjecting her to sexually explicit and gender-derogatory comments and conduct, some of which included sexual assaults, stalking and other physically threatening actions.

26.     Lord experienced sexually harassing and gender-derogatory behavior on a daily or near-daily basis from Adenrele, both directed specifically to her and directed at other women employees within Lord's sight and hearing.

27.     The is a non-exhaustive description of Adenrele's comments and behavior that Lord endured.

28.     Adenrele would proposition Lord to go to hotels with him after work.

29.     He would ask Lord what it cost to rent her for the night.

30.     He said American women need to learn their place is on their knees to pleasure a man.

31.     He said women are stupid.

32.     He said LGBT women needed a good fuck by a man to realize they are women.

33.     He physically pursued Lord around the garage when she tried to avoid him, interfering with her work.

34.     He would make kissing sounds, lick his lips, howl, and make other crude sexual sounds and gestures toward Lord, including gestures that graphically suggested

oral sex and other sex acts.

35.     He would leer at Lord's body and look her up and down, often while making sexually suggestive expressions and gestures. Sometimes he groped his own crotch while staring at her.

36.     On one occasion, he came up behind Lord and grabbed the back of her shirt. When she rounded on him and told him not to touch her, he told her she liked to play hard to get.

37.     He repeatedly demanded Lord go out with him outside work, sometimes saying he would pay her for it. Sometimes when making these propositions, Adenrele invaded Lord's personal space, standing just inches from her.

38.     He would make sexual comments about other female employees within Lord's presence. For example, as women bus drivers exited their buses, he would comment on their bodies, saying things like: that one's butt is big – in my country [Adenrele is Nigerian], we would fuck that hard, hard, hard.

39.     He propositioned Lord for oral sex by telling her he would buy her a handbag if she acquiesced. He added to this proposal by showing Lord a photo on his cell phone of a woman performing sex acts.

40.     One on occasion, Lord got in her car to leave work for the day and found herself confronted by Adenrele, who had followed her and was banging on her car

window.

41.     On multiple occasions, Adenrele graphically described sex acts he wanted to perform on Lord and that he wanted her to perform on him.

42.     Adenrele threatened to cause adverse job consequences for Lord if she refused his sexual demands. For example, Adenrele told Lord that he was close with the Laredo Garage Superintendent, Wilfred Hibbert, who ultimately supervised both Adenrele and Lord. Adenrele told Lord that, if she refused his sexual demands, he would get Hibbert to assign more difficult duties to Lord.

43.     Adenrele groped Lord's buttocks.

44.     He told Lord he wanted her to come with him to a hotel and have a threesome with another female employee about whom he also frequently made graphic sexual comments.

45.     When Lord would object to Adenrele's comments and actions, as she did multiple times, he would laugh in her face, ignore her altogether, claim he had been joking, or tell her he knew she would give in to him eventually like all women do.

46.     By July 2017, Adenrele's conduct became even more physically threatening.

47.     On one occasion that month, he followed Lord in his car for a while as she drove home from work.

8

48.     Later that month, Adenrele sexually assaulted Lord, forcing his hand between her legs.

49.     On still another occasion in July 2017, Adenrele came up behind Lord and pressed his penis, which was erect, forcefully into Lord's buttocks.

50.     While the foregoing is not an exhaustive list of the sexually harassing conduct to which Adenrele subjected Lord, it is representative of what Lord experienced from Adenrele on a daily or near-daily basis beginning when she was assigned to the Laredo Garage in October 2016.

51.     Lord did not let Adenrele's conduct go unchallenged or unreported, but her efforts were for naught. Lord on multiple occasions demanded that Adenrele stop his conduct, to no avail.

52.     Lord also reported his sexually harassing conduct to MARTA officials multiple times.

53.     For example, within her first month at Laredo Garage, Lord told her supervisor Lester Bostic several times about Adenrele's sexually harassing behavior. Bostic acknowledged her concerns but took no action to investigate or cure the situation, and Adenrele's sexually offensive behaviors continued unabated. Instead, Lester told Lord she was a troublemaker and threatened to write her up if she kept complaining.

54.     Lord reported Adenrele's conduct to more senior MARTA managers, including: (a) Laredo Garage Superintendent Hibbert; (b) General Superintendent Kenneth Middlebrook; (c) and Executive Director of Bus Maintenance William Taylor. None of these reports resulted in an investigation or action on MARTA's part to stop Adenrele's conduct and, after these reports, Adenrele's sexual harassment of Lord continued.

55.     Indeed, before Lord ever made her complaints, one or more other women employees had complained to MARTA managers and MARTA's internal Equal Employment Opportunity ("EEO") office about Adenrele's sexually harassing behavior, but these complaints, too, triggered no investigation or remedial action.

56.     Additionally, at least some of Adenrele's actions were so openly and obviously perpetrated that MARTA's managers on site knew, or reasonably should have known, he was creating a sexually hostile working environment.

57.     In July 2017, Lord made a written complaint to MARTA's EEO office, which finally opened an investigation into Adenrele's behavior. During this investigation, other female employees submitted written statements to the EEO office describing sexually harassing behavior they had experienced from Adenrele, some of which was similar to the conduct Lord had experienced.

58.     When MARTA's investigators interviewed Lord, she repeatedly tried to

10

explain that Adenrele had subjected her to a sustained sexually hostile working environment involving many more incidents than just the July incidents that had directly caused her to go to EEO. However, the investigators repeatedly refused to permit Lord to provide these additional facts in support of her claims.

59.    The investigators failed to obtain the security camera video that would have captured one of Adenrele's assaults on Lord before the video was deleted.

60.    Lord called MARTA's then-CEO Elizabeth O'Neill directly and told her she had been sexually harassed and that MARTA's investigation of the matter was being mishandled in ways prejudicial to her.

61.    For several weeks after Lord made her EEO complaint, MARTA continued having her work at Laredo Garage, where Adenrele also still worked.

62.    As the EEO investigation continued, MARTA reassigned Lord to a different maintenance facility, the Perry Garage.  Adenrele, however was allowed to remain assigned to Laredo Garage, eventually returning to work there full time after he his paid leave, despite Lord's greater seniority.

63.    Transferring Lord to the Perry Garage reduced her opportunities to earn overtime pay, because the Laredo Garage was MARTA's biggest and busiest bus maintenance facility.

64.    MARTA's EEO office cleared Adenrele of sexual harassment, but it did

11

find Adenrele had violated MARTA's "standard of conduct" and workplace violence policies. EEO's investigative report noted that Adenrele was previously "disciplined for displaying similar behavior." Yet, MARTA determined Adenrele required only minor discipline and some sensitivity training, and he remained employed.

65.     In late October 2018, MARTA, having finished its EEO investigation, directed Lord to return to her old assignment at the Laredo Garage, where she would be required to resume working alongside Adenrele.

66.     Lord repeatedly protested MARTA's decision to move her back to Laredo Garage. She told multiple MARTA managers, including O'Neill, that she intended to take further action to oppose Adenrele's sexual harassment and MARTA's failure to take appropriate remedial measures.

67.     Meanwhile, Lord applied for multiple other jobs within MARTA for which she was qualified and which would not have required her to work at Laredo Garage.

68.     MARTA rejected her as being allegedly unqualified for the jobs to which she applied even though she was qualified for the positions.

69.     As pled, *supra*, on January 5, 2018, Lord filed her charge with the United States EEOC. Prior to filing her charge, Lord told multiple MARTA managerial officials that she intended to take the matter to the EEOC.

12

70.     In early February 2018, MARTA reassigned Lord again, this time to the Hamilton Garage.

71.     Hamilton Garage was a more dangerous and undesirable work location than Perry or Laredo Garages. Among other reasons, this was because: (a) Laredo and Perry used clean natural gas fuel while Hamilton used diesel fuel, which carries greater risk of injury from exposure to the fuel and exhaust; (b) Hamilton Garage's equipment and procedures required substantially more intense manual labor and entailed a greater injury risk to the workers; (c) the Perry Garage and Laredo Garages were both convenient commutes from Lord's residence, while the Hamilton Garage was much farther from her residence. Additionally, Hamilton, like Perry, was smaller and less busy than Laredo and therefore reduced Lord's opportunities to earn overtime compensation.

72.     Lord told multiple MARTA senior managers that she believed transferring her to Hamilton was retaliatory. Among other things, she emailed them language from the EEOC's website explaining that unlawful retaliation included moving employees to less favorable job assignments. However, MARTA moved Lord to Hamilton Garage anyway.

73.     Almost immediately after Lord arrived at Hamilton Garage, MARTA continued retaliating against her for her protected opposition and participation conduct.

74.     Within a few days after she reported to work at Hamilton Garage, her supervisor there, a Mr. Person, directed her to drive a bus to the Laredo Garage. Lord objected, explaining that she had been sexually harassed at Laredo Garage and felt unsafe going there because the harasser still worked there. Person told Lord he had already heard she was a troublemaker.

75.     Person refused Lord's requests for training on the Hamilton Garage's fueling equipment, on which she had no experience.

76.     Person treated Lord dismissively and aggressively in their interactions.

77.     After Lord requested that a female union official be present for a meeting Person had set with Lord, Person called the MARTA police on Lord while she was at work.

78.     In September 2018, Lord suffered an on-the-job injury to her eyes and has been out of work and on workers compensation since then.

79.     As of the filing of this Complaint, Lord remains employed with MARTA.

## Governmental and Individual Liability

80.     The highest MARTA official(s) with responsibility to protect Plaintiff against sexual harassment had actual or constructive notice of Adenrele's illegal actions giving rise to this Complaint including, without limitation, MARTA's then-top

14

executive, and multiple other managers with authority over both Plaintiff and Adenrele. As pled above, multiple MARTA managers in both Adenrele and Plaintiff's command chain received such notice via their receipt of complaints from Plaintiff and others, and (at least in some cases) via the open and notorious nature of Adenrele's conduct.

81.     Despite such actual or constructive knowledge, these officials failed to take reasonable, prompt, remedial action as required by the MARTA anti-harassment policies and federal law to protect Plaintiff's right to be free from Adenrele's sexual harassment.  Instead, those officials permitted the harassment to continue, cleared Adenrele of harassment despite overwhelming evidence, and retaliated against Plaintiff both for opposing the harassment internally and for filing her EEOC charge.

82.     Adenrele, along with the MARTA officials who knew of his illegal harassment and failed to stop it and who retaliated against Plaintiff for making her reports, acted under color of state law when committing their acts or omissions giving rise to this Complaint, as all of their conduct was perpetrated using the power and authority of their positions as MARTA officials.

83.     At all times material to this Complaint, it was clearly established law that subjecting an employee to sexual harassment or a sexually hostile working environment based upon gender violates the Equal Protection Clause.

84.     At all times material to this Complaint, it was clearly established law that a governmental employer may not retaliate against an employee because she opposes sexual harassment or a sexually hostile working environment.

### Punitive Damages Allegations – Defendant Adenrele

85.     Adenrele undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to the Plaintiff and her federally protected rights.

86.     Additionally and in the alternative, Adenrele undertook all of the above-pled conduct with reckless disregard for the Plaintiff and her federally protected rights.

### COUNT I
### Sexual Harassment/ Sexually Hostile Working Environment
### (Gender Discrimination)
### (42 U.S.C. § 1983 Against MARTA
### and Adenrele in his Individual Capacity)

87.     Plaintiff incorporates each of the above factual allegations as if fully restated here.

88.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws regardless of her gender.

89.     Defendants violated Plaintiff's rights to equal protection by, among other things, subjecting her to a sexually harassing and hostile working environment, and by

16

retaliating against Plaintiff for refusing, opposing, and reporting Adenrele's unlawful sexual harassment. Defendants did not take similar actions against men in the department.

90.     MARTA violated Plaintiff's rights to equal protection by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct despite actual and/or constructive notice of such conduct.

91.     The conduct of Defendants constitutes unlawful sexual harassment and an unlawful sexually hostile working environment, based upon gender, in violation of the Equal Protection Clause.

92.     Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State and local law.

93.     Defendants' unlawful conduct violated the above-pled clearly established law.

94.     As a direct and proximate result of all of the Defendants' actions, Plaintiff has suffered damages including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

95.     Defendant Adenrele undertook his unlawful conduct intentionally and maliciously with respect to Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Adenrele.

96.    Alternatively, Defendant Adenrele undertook his unlawful conduct recklessly with respect to the Plaintiff and her federally protected rights, entitling Plaintiff to recover punitive damages against Adenrele.

## COUNT II
### Sexual Harassment/ Sexually Hostile Working Environment
### (Title VII Against MARTA)

97.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

98.    MARTA violated Plaintiff's rights under Title VII by, among other things: subjecting her to a sexually harassing and hostile working environment, failing to take reasonable preventative or remedial measures to address such environment despite actual and/ or constructive notice of same, and taking or permitting adverse actions against Lord because she refused the unwanted sexual advances.

99.    The above-pled conduct to which Lord was subjected constituted sexual harassment and a sexually hostile working environment, based on Lord's gender, in violation of Title VII.

100.    MARTA is liable for sexually harassing and sexually hostile working environment because it had actual and/or constructive notice of same yet failed take reasonable preventative or remedial measures.

101.    As a direct and proximate result of MARTA's conduct, Lord has suffered damages, including lost wages and benefits, emotional distress, inconvenience,

18

humiliation, and other indignities.

## COUNT III
### Retaliation
### (Title VII Against MARTA)

102.  Plaintiff incorporates each of the above factual allegations as if fully restated here.

103.  MARTA retaliated against Lord because she opposed, and participated in investigations of, sexual harassment and a sexually hostile working environment, in violation of Title VII's opposition and participation retaliation protections.

104.  MARTA's unlawful retaliation against Lord included both discrete retaliatory adverse actions (such as moving her out of Laredo Garage instead of Adenrele, and assigning Lord to Hamilton Garage), as well as a pattern of hostility, degradation, and retaliatory actions which collectively constituted an actionable retaliatory hostile working environment.

105.  As a direct and proximate result of MARTA's conduct, Lord has suffered damages, including lost wages and benefits, emotional distress, inconvenience, humiliation, and other indignities.

## COUNT IV
### Assault
### (Against Adenrele in his Individual Capacity)

106.  Plaintiff incorporates each of the above factual allegations as if fully restated here.

19

107.   The actions of Adenrele described above constitute assault as he threatened to and did in fact make unjustified, harmful, and offensive contact with Plaintiff.

108.   As a direct and proximate result of the assault committed by Adenrele, Plaintiff suffered, and will in the future suffer from these and other damages.

109.   Adenrele acted with malice when he assaulted Plaintiff.

## COUNT IV
### Battery
### (Against Adenrele in his Individual Capacity)

110.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

111.   The actions of Adenrele described above constitute battery as he made unjustified, harmful, and offensive contact with Plaintiff.

112.   As a direct and proximate result of the batteries committed by Adenrele, Plaintiff suffered, and will in the future suffer from these and other damages.

113.   Adenrele acted with malice when he battered Plaintiff.

## COUNT V
### Punitive Damages O.C.G.A. § 51-12-5.1
### (Against Defendant Adenrele
### in his Individual Capacity)

114.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

20

115.   Adenrele' above-pled actions were willful, malicious, wanton and/or oppressive within the meaning of O.C.G.A. § 51-12-5.1(b).  Additionally and in the alternative, Adenrele's actions display within the meaning of that statute, an entire want of care indicative of a conscious indifference to their actions' consequences.

## PRAYER FOR RELIEF

Plaintiff respectfully requests the following relief:

a.   declaratory judgment that Defendants violated the Plaintiff's rights under the Equal Protection Clause and Title VII;

b.   an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future and, specifically, requiring Defendant MARTA to prevent Plaintiff from being placed in the same working environment as Adenrele again without any prejudice to Plaintiff because of such protective measures;

c.   full back pay, with prejudgment interest thereon;

d.   compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

e.   punitive damages, against Defendant Adenrele in his individual capacity, in an amount to be determined by the enlightened conscience

21

of the jury to be sufficient to punish Defendant Adenrele for his

conduct toward Plaintiff and deter him from similar conduct in the

future;

f.   reasonable attorneys' fees and costs; and

g.   other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

LEGARE, ATTWOOD & WOLFE, LLC

By:   _s/ Steven E. Wolfe_
Steven E. Wolfe
Georgia Bar No. 142441

Two Decatur Towne Center
125 Clairemont Avenue, Suite 380
Decatur, Georgia 30030
T: (470) 823-4000 | F: (470) 201-1212
sewolfe@law-llc.com
Counsel for Plaintiff